UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
ERCOLE RICIOPPO a/k/a ERIC
RICIOPPO,

                Plaintiff,        **MEMORANDUM & ORDER**

  -against-                            04 Civ. 3630 (DRH) (WDW)

COUNTY OF SUFFOLK; SUFFOLK
COUNTY COMMUNITY COLLEGE;
THE BOARD OF TRUSTEES OF
SUFFOLK COUNTY COMMUNITY
COLLEGE; MICHAEL HOLLANDER;
BRIAN FOLEY; VIVIAN FISHER;
ERIC KOPP; and ANTHONY
APPOLARO,

                Defendants.
----------------------------------------------------X

**APPEARANCES:**

**WOLIN & WOLIN ESQS.**
Attorney for Plaintiff
420 Jericho Turnpike, #215
Jericho, New York 11753
By: Alan E. Wolin, Esq.

**BERKMAN, HENOCH, PETERSON & PEDDY, P.C.**
Attorney for Defendant Michael Hollander
100 Garden City Plaza
Garden City, New York 11530
By: Andrew M. Roth, Esq.

**CHRISTINE MALFI, SUFFOLK COUNTY ATTORNEY**
Attorneys for Defendants County of Suffolk, Suffolk County Community College, the Board of Trustees of Suffolk County Community College, Brian Foley, Vivian Fisher, Eric Kopp, and Anthony Appolaro
100 Veterans Memorial Highway
Hauppauge, New York 11788
By: William G. Holst, Esq.,& Jennifer K. McNamara, Esq.


**HURLEY, District Judge:**

**INTRODUCTION**

Plaintiff Ercole Ricioppo ("Plaintiff") filed the present complaint on August 23, 2004 against Defendants County of Suffolk ("Suffolk"); Suffolk County Community College ("SCCC"); the Board of Trustees of Suffolk County Community College ("Board"); Michael Hollander ("Hollander"); Brian Foley ("Foley"); Vivian Fisher ("Foley"); Eric Kopp ("Kopp"); and Anthony Appolaro ("Appolaro") alleging that they violated his right to free speech, equal protection, and due process, pursuant to 42 U.S.C. § 1983 ("§ 1983"); that they conspired to violate his constitutional rights, in violation of 42 U.S.C. § 1985 ("§ 1985"); and that they breached their contractual obligations pursuant to New York common law. Defendants did not submit an answer. Instead, Defendants Suffolk, SCCC, Board, Foley, Fisher, Kopp and Appolaro (collectively "County Defendants") move to dismiss the complaint, along with Defendant Hollander, who filed a separate motion. For the reasons set forth below, the Court GRANTS Defendants' motions as to Court I, portions of Count II, Count III, and Count IV. The Court DENIES Defendants' motions as to portions of Count II. Finally, the Court grants Plaintiff leave to amend.

**BACKGROUND**

The following summary of facts is drawn from the Complaint. Plaintiff is a resident of Nassau County, New York. Defendant Suffolk is a municipal corporation existing pursuant to the laws of New York. Defendant SCCC is an institution of higher-learning, maintained and operated by Suffolk. The Board is the duly appointed or elected body that constitutes the legally responsible authority of Defendant SCCC. Defendant Hollander is the Chairman of the Board. Defendants Foley and Fisher are elected legislators of the County of Suffolk. Defendant Kopp is

the Chief Deputy County Executive for the County of Suffolk. Defendant Appolaro is the Assistant Deputy County Executive for the County of Suffolk. Each of the individual defendants is being sued in his individual and official capcity.

In September 1995, Plaintiff was employed by Defendant SCCC as Vice President for Marketing and Public Affairs. Plaintiff's duties included acting as a liaison between Defendant SCCC and the Suffolk County Legislature and designing marketing programs. Plaintiff reported directly to the President of Defendant SCCC, who, during much of the relevant time, was Salvatore J. LaLima ("LaLima").

The President of Defendant SCCC, "pursuant to statute, regulation, rule, procedure, and custom" (Compl. ¶ 24), is charged with the responsibility of formulating and presenting to Defendant Board recommendations on matters including, *inter alia*, "organizational structure, personnel appointments, promotions, retention, and retrenchment." (*Id.*) At all times relevant to the Complaint, Defendant Hollander was the chairman of Defendant Board.

Defendant Board appoints personnel, adopts salary schedules, approves the organizational pattern of Defendant SCCC, establishes policies, and delegates to the professional staff responsibility for personnel policies, conditions of employment, and the creation of divisions, departments, and appropriate administrative and academic positions.

From his hiring, Plaintiff received regular continuing appointments. He also carried academic rank. Upon the commencement of his employment at Defendant SCCC as Vice President for Marketing and Public Affairs, Plaintiff was also given the title of Assistant Professor of Communications and regularly taught one course each semester in his field.

During his tenure Plaintiff alleges that he was "critical of and opposed certain practices and opinions undertaken and expressed by the Office of the Suffolk County Executive, certain members of the Suffolk County Legislature, including Defendants Foley and Fisher, Defendant Hollander, and other members of Defendant Board as it related to College affairs." (*Id.* ¶ 29.) Plaintiff alludes to a numbers of occasions when he "voiced his objections" to the advertising plans of Defendant SCCC, but he does not provide any specifics about the context of these objections or when they occurred. Plaintiff similarly alleges that "during the time that he was employed as Vice President, [he] also expressed and publicly criticized other practices of Defendant Hollander, including usurping authority . . . functioning in a way that was outside his authority as a member of Defendant Board, and . . . engaging in unethical and illegal actions." (*Id.* ¶ 32.) Again, Plaintiff provides no further details.

Plaintiff then alleges that "[i]n direct response to [his] exercise of his protected rights, Defendants, their agents, servants and employees, under color of law and the cloak of their official positions, undertook a persistent pattern of harassing and undermining Plaintiff's position." (*Id.* ¶ 35.) In May 2003, Defendant Board abolished Plaintiff's position effective June 1, and created a new position that absorbed many of Plaintiff's duties. Plaintiff was not offered the position. Plaintiff alleges that the abolishment of his position occurred "days after [he] wrote a letter to President LaLima complaining about Defendant Hollander's conduct." (*Id.* ¶ 40.)

Consequently, Plaintiff lost his position, which he alleges was contrary to the procedures outlined in the "Managerial-Confidential Employees of Suffolk County Community College – Status and Benefits Handbook" ("Handbook"). (*See* Compl. ¶ 28.) The Handbook, drafted in November 1982, is divided into three parts: Part I–Administrative Academic Status; Part

II–Benefits; and Part III–Duties and Load. Specific to Plaintiff's claims is Part I, Paragraph 6, which reads, "Upon request made on or before January 1, an Administrative Officer will be granted an assignment the following academic year as a classroom instructor, counselor, librarian, or technical assistant provided that a vacancy exists or arises in his/her discipline." Part I, Paragraph 7, entitled "Seniority Rights," qualifies Paragraph 6. Part I, Paragraph 7(c), which applies to Plaintiff, directs that "[a]ll other Administrative Officers are not covered by nor enjoy the rights and accumulations of seniority. Part I, Paragraph 9 then states that "Administrative Officers entering their sixth year of employment with the College shall be granted continuing employment. Prior to being given continuing appointment, employees shall be considered on probationary status."

Plaintiff alleges that the termination of his employment directly contravened the Handbook and was done in retaliation for his criticisms of the Board and its members. Based upon these alleged violations of his constitutional rights to free speech, due process, and equal protection, Plaintiff filed the present complaint.

## LEGAL STANDARD

Defendants now move to dismiss the Complaint pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and Rule 12(b)(6). In considering a motion to dismiss, a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *See Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999).[1] The court must accept the factual allegations contained

---

[1] Plaintiff attempts to incorporate portions of his General Municipal Law § 50-h hearing transcripts to defeat Defendants' motions. (*See* Exs. in Opp'n to Def. Hollander's Mot.) These transcripts were not incorporated by reference in the Complaint. To support the inclusion of

in the complaint as true, and view the pleadings in the light most favorable to the non-moving party, drawing all reasonable inferences in his favor. *See Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994). Dismissal is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts entitling him to relief in support of his claim. *See Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 79 (2d Cir. 2003). The issue is not how likely the plaintiff is to ultimately prevail, but whether he is entitled to even offer evidence to support his claims. "Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test." *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir. 1976) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). These standards apply with particular strictness where, as here, the complaint alleges civil rights violations. *See Gant v. Wallingford Bd. of Educ.*, 69 F.3d

---

these documents, Plaintiff argues that on a motion to dismiss a court may consider any document that is "'integral' to plaintiff's claims even if not explicitly incorporated by reference." (Pl.'s Mem. in Opp'n to Hollander's Mot. at 2.) Plaintiff relies upon *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001), *Cortec Indus., Inc. v. Sum Holding LP*, 949 F.2d 42, 47 (2d Cir. 1991), and *Faulkner v. Verizon Comm., Inc.*, 189 F. Supp. 2d 161, 168 (S.D.N.Y. 2002). *Gregory* is clearly inapplicable because the admitted document was incorporated by reference in the complaint, unlike the § 50-h hearing transcript. *See Gregory*, 243 F.3d at 691. *Cortec* and *Faulkner* are similarly inapplicable because those both pertain to a defendant's attempt to admit "integral" documents with its motion to dismiss that the plaintiff had failed to attach to its complaint. *See Cortec*, 949 F.2d at 47 ("[P]laintiff should not so easily be allowed to escape the consequences of its own failure [to attach an integral document]."); *Faulkner*, 189 F. Supp. 2d at 168 ("[W]e may take judicial notice of pleadings in other lawsuits attached to the defendant's motion to dismiss, as a matter of public record."). Those opinions stand for the principle that a defendant should not lose on a motion to dismiss–or be forced to convert its motion to one for summary judgment–because of a plaintiff's failure to attach integral documents to the complaint. Before the Court is the converse situation: Plaintiff attempts to introduce so-called "integral" transcripts in its opposition to the motion to dismiss, even though Plaintiff failed to reference these "integral" transcripts in its Complaint. Thus, Plaintiff is attempting to take advantage of a rule that protects defendants from artful pleadings. Plaintiff does not cite any case law addressing the present situation and his novel use of the rule. Because it was not referenced in the Complaint, and because of the general rule that a court will only consider documents attached or incorporated by reference in the complaint, the Court will not consider Plaintiff's submission of the § 50-h hearing transcript when deciding the present motions.

669, 673 (2d Cir. 1995). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation omitted).

## DISCUSSION

Defendants have moved to dismiss the complaint. Though Defendant Hollander filed separately from the County Defendants, his arguments in support of dismissal are the same as the County Defendants' arguments. Therefore, the Court analyzes Defendants' arguments in support of dismissal together.

Defendants move to dismiss on a number of theories. Defendants argue: (1) that the Complaint fails to state a claim under § 1983; (2) that the Complaint fails to state a claim under § 1985; (3) that the claims against the individual defendants are barred by qualified immunity; and (4) that the Complaint fails to state a common law contract claim. Plaintiff's counter-arguments are difficult to parse because they do not directly address Defendants' arguments, but it appears that Plaintiff disputes each of Defendants' arguments. The Court analyzes each of these arguments in turn.

**I.  Failure to State a § 1983 Violation**

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To prevail on a § 1983 claim, a plaintiff must establish that a person acting under color of state law deprived him of a federal right. *See* § 1983; *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). Plaintiff alleges that Defendants violated § 1983 by violating his right to free speech, due process of law, and equal protection of the law. (*See* Compl. ¶ 1.)

      A.      **Count I: First Amendment Retaliation**

Count I alleges that Defendants engaged in actions and omissions that were "arbitrary, capricious, unlawful and motivated by no legitimate purpose" other than to retaliate against Plaintiff because of his exercise of his First Amendment rights in violation of § 1983. (Compl. ¶ 42.) Defendants argue that "nothing could be further from the truth" (Def. Hollander's Mem. at 10), which is a general flaw of their motion: it argues the truth, rather than the adequacy of the Complaint.

Although a public employee "does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment," these rights are not absolute, because the public employers has a legitimate interest in regulating the speech of its employees to promote the efficiency of its public services. *See Mandell v. County of Suffolk*, 316 F.3d 368, 382 (2d Cir. 2003) (citing *Connick v. Myers*, 461 U.S. 138, 140 (1983)); *see also Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). To plead a *prima facie* case of First Amendment retaliation, a plaintiff must establish: (1) that his speech addressed a matter of public concern; (2) that he suffered an adverse employment action; and (3) that a causal connection existed between the speech and the adverse employment action, "so that it can be said that his speech was a motivating factor in the determination." *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999); *see*

*also Mandell*, 316 F.3d at 382; *Locurto v. Safir*, 264 F.3d 154, 166 (2d Cir. 2001) (describing elements of First Amendment retaliation claim). There is no dispute that Plaintiff suffered an adverse employment action, thereby satisfying the second element. Therefore, the Court only discusses the "public concern" and "causal connection" elements regarding Plaintiff's *prima facie* case.

### 1. *A Matter of Public Concern*

The question of whether an employee's speech addresses a matter of public concern is one of law, not fact. *See Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983); *see also Morris*, 196 F.3d at 110. "Speech by a public employee is on a matter of public concern if it relates 'to any matter of political, social, or other concern to the community.'" *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003) (quoting *Connick*, 461 U.S. at 146). "If the speech, however, is focused on matters personal to the employee, it cannot be classified as being on a matter of public concern and the government, acting as an employer, 'has greater latitude to discipline' the employee." *Id.* (quoting *Connick*, 461 U.S. at 146).

Plaintiff alleges that he "voiced his objections to the wishes of the office of the Suffolk County Executive," which constituted speech on a matter of public concern. He states that he criticized Defendants Kopp's and Appolaro's attempts to curtail advertising in Suffolk Life, a local newspaper, "because [the paper] was critical of the Suffolk County Executive's Office and certain County Legislators." (*See* Compl. ¶ 30), and Defendant Hollander's suggestion that Defendant SCCC advertise in "New York Sports Scene," a publication helmed by Defendant Hollander's personal friend (*See id.* ¶ 31). Those allegations, though sparse, pertain to matters of public concern. *See Lauretano v. Spada*, 339 F. Supp. 2d 391, 410 (D. Conn. 2004) ("A corrupt

or otherwise improper decision is the most obvious example of an instance where the employee's comment upon the decision would necessarily be of public concern, and courts have vigilantly protected an employee's right to expose public misconduct."). Which is to say, Plaintiff has adequately plead the first element of a First Amendment retaliation claim.

### 2. *Causal Connection*

Plaintiff must also allege a causal connection between his protected speech and the adverse employment action. As explained by the Second Circuit, "The causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action, that is to say, the adverse employment action would not have been taken absent the employee's protected speech." *Morris*, 196 F.3d at 110 (citations omitted). However, a "plaintiff may not rely on conclusory assertions . . . to satisfy the causal link." *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2004) (citing *Morris*, 196 F.3d at 111).

Plaintiff contends that "[t]he causal link between a protected activity and the alleged retaliatory action can be inferred from timing alone." (Pl.'s Opp'n Mem. to Def. Hollander's Mot. to Dismiss, at 9.) Paragraphs 30 and 31 are the only points in the Complaint that identify specific instances of Plaintiff speaking on matters of public concern. In those paragraphs, however, Plaintiff does not allege when he criticized either Defendants Kopp's and Appolaro's attempts to curtail advertising in "Suffolk Life" or Defendant Hollander's suggestion that Defendant SCCC advertise in "New York Sports Scene." Because he has failed to plead the relation-in-time of those comments to the adverse employment action, the legitimacy of Plaintiff's "timing alone" argument, vis-a-vis paragraphs 30 and 31, may not be evaluated from the face of the Complaint.

This deficiency is not cured by paragraph 40, which reads: "The action of Defendant Board, in eliminating Plaintiff's position, occurred days after Plaintiff wrote a letter to President LaLima complaining about Defendant Hollander's *conduct*" (emphasis added). Since the nature of the "conduct" is not identified, it is impossible to determine whether Plaintiff's comments *in the letter* were on the same matters of public concern identified in Paragraphs 30 and 31. As such, the Defendant's are not placed on sufficient notice to fashion a meaningful response.

In sum, the paucity of detail regarding the context and timing of Plaintiff's objections and criticisms fails to pass muster on a motion to dismiss. *See Velez v. Levy*, 401 F.3d 75, 97 (2d Cir. 2005) ("[I]n assessing a motion to dismiss in [the First Amendment retaliation] context, we must be satisfied that such a claim is 'supported by specific and detailed factual allegations,' which are not stated in wholly conclusory terms.'") (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)). Plaintiff's allegation of a causal connection between his speech on a matter of public concern and the adverse employment action is merely a series of "naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6)." *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994) (citation and quotation marks omitted). Accordingly, Defendant's motion to dismiss the Count I is granted.

### B.  Count II: Due Process

Count II of the Complaint alleges a violation of "substantive and procedural due process." (Compl. ¶ 52.) Plaintiff's opposition memoranda suggest that he has three due process claims: procedural due process, substantive due process, and his "liberty interest." (*See* Pl.'s Opp'n Mem. to County Defs. Mot. to Dismiss at 8-12.) The Court analyzes each due process claim separately.

1.  **Procedural Due Process**

The Due Process Clause imposes procedural safeguards on governmental decisions that deprive individuals of liberty or property interests, within the meaning of the Fifth or Fourteenth Amendments. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Thus, to prevail on a procedural due process claim under the Fifth and Fourteenth Amendments, a plaintiff must demonstrate that he was deprived of a protected property or liberty interest. *See Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995). "A public employee has a property interest in continued employment if the employee is guaranteed continued employment absent just cause for discharge." *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 212 (2d Cir. 2003) (citation and quotation marks omitted).

Regarding the procedural due process claim, the parties' dispute whether Plaintiff had a protected property interest in his position as Vice President of Marketing and Public Affairs. Defendants assert that Plaintiff was a probationary, at-will employee and, therefore, could be terminated at any time. Plaintiff, meanwhile, argues that, "according to the literal terms of paragraph 9 [of the Handbook], [he] received a continuing appointment when he entered his sixth year and was no longer a probationary employee at the time his employment ceased." (Pl.'s Opp'n Mem. to Def. Hollander's Mot. at 11.) This dispute regarding the terms of the Handbook occupies the bulk of the parties' memoranda, but it inevitably requires exposition and analysis of the specifics of Plaintiff's actual employment status. Thus, it raises issues of fact that are inappropriate to settle on a motion to dismiss. As for present concerns, Plaintiff has plead that he was deprived of a protected property interest without due process of law. Therefore, Defendants' motion to dismiss the procedural due process claim is denied.

### 2. Substantive Due Process

Plaintiff alleges a "substantive due process" violation, but there are no allegations to support such a claim. Substantive due process rights are violated only when the government has engaged in conduct so egregious it "shocks the conscious." *Rochin v. California*, 342 U.S. 165, 172 (1952). The Supreme Court has "been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). Conduct that is merely incorrect or ill advised does not meet this high standard. *See Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994).

Even if all of Plaintiff's factual allegations were true, there is nothing in the Complaint that rises to the level of "shocking the conscience." Even if Plaintiff lost his job and was subjected to a peer review as a result of exercising his First Amendment rights, such actions do not "shock the conscience" in a manner that typically raises constitutional concerns. *Cf. Scatorchia v. County of Suffolk*, 01 Civ. 3119 (TCP), 2006 WL 218138, *4 (E.D.N.Y. Jan. 24, 2006) ("[E]ven if the touch was a battery, it would not violate her substantive due process rights."); *Bennett v. Pippin*, 74 F.3d 578 (5th Cir1996) (finding that conduct "shocked the conscious" where a sheriff raped a murder suspect); *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720 (3d Cir. 1989) (finding, in the sexual harassment context, that conduct "shocked the conscious" where a teacher committed multiple sexual assaults on his high school students). The scant factual allegations are an inadequate predicate for "shocking the conscience." Accordingly, Defendants' motion to dismiss the substantive due process claim is granted.

### 3. Liberty Interest

Finally, Plaintiff argues that he has "sufficiently established that he was deprived of a protected liberty interest." (Pl.'s Opp'n Mem. to County Def.'s Mot. at 12.) Plaintiff then argues that "'[w]here a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him,' a protectable liberty interest may be implicated that requires procedural due process in the form of a hearing to clear his name." (*Id.* (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971).) Defendants' counter that Plaintiff has not adequately plead the "stigma plus" violation as required by the Second Circuit. *See Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir. 1994).

Loss of one's reputation can invoke the protections of the Due Process Clause if that loss is coupled with the deprivation of a more tangible interest, such as government employment. *See Patterson v. City of Utica*, 370 F.3d 322, 330 (2d. Cir. 2004). For a government employee, a cause of action under § 1983 for deprivation of a liberty interest without due process of law may arise when an alleged government defamation occurs in the course of dismissal from government employment. *Id.*; *see also Morris*, 196 F.3d at 114. This is the type of claim that is commonly referred to as a "stigma-plus" claim. *See Patterson*, 370 F.3d at 330.

In order to fulfill the requirements of a stigma-plus claim arising from the termination from government employment, a plaintiff must first show that the government made stigmatizing statements about him–statements that call into question plaintiff's "good name, reputation, honor, or integrity." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 446 (2d Cir. 1980). Statements that "denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession" may also fulfill this

requirement. *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630-31 (2d Cir. 1996). A plaintiff generally is required only to raise the falsity of these stigmatizing statements as an issue, not prove they are false. *See Brandt v. Bd. of Coop. Educ. Servs.*, 820 F.2d 41, 43 (2d Cir.1987). Second, a plaintiff must prove these stigmatizing statements were made public. *See Abramson v. Pataki*, 278 F.3d 93, 101-02 (2d Cir. 2002). And third, plaintiff must show the stigmatizing statements were made concurrently in time to plaintiff's dismissal from government employment. *See Martz v. Inc. Vill. of Valley Stream*, 22 F.3d 26, 32 (2d Cir. 1994) (five months later for publication of defamatory statements is too long).

Plaintiff failed to allege any stigmatizing activity. Plaintiff said that he was subject to inquiries by the Suffolk County Legislature and alleges that he underwent a peer review, but the Complaint fails to allege that these were stigma-causing. (*See* Compl. ¶ 37-38.). Count II states that actions of Defendants caused Plaintiff to "suffer damages to his reputation and standing in the community," but nothing in the factual allegations suggests that such damage had occurred. Having thus failed to plead a factual predicate of a due process violation of his "liberty interest," Plaintiff has failed to state a "liberty interest" due process claim. As such, Defendants' motion to dismiss the "liberty interest" claim is granted.

### C. Count II: Equal Protection

Count II of the Complaint also alleges a violation of Plaintiff's "equal protection" rights. (Compl. ¶ 52.) Plaintiff does not present any arguments in his opposition memoranda to support his equal protection claim. The Equal Protection Clause of the Fourteenth Amendment guarantees the right to be free from "invidious discrimination in statutory classifications and other governmental activity." *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) (quoting *Harris*

*v. McRae*, 448 U.S. 297, 322 (1980)). "The Equal Protection Clause [thus] requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). There is no allegation in the Complaint of any "similarly-situated" individuals who were treated differently. To the extent that Plaintiff may be pleading a "class of one" equal protection claim, he also fails to mention it in the Complaint. As such, Plaintiff has failed to state an equal protection claim. Accordingly, Defendants' motion to dismiss the equal protection claim is granted.

## II.     Count III: Section 1985(3)

In Count III, Plaintiff alleges that the "Defendants and their agents were conspirators actively engaged in a scheme and conspiracy designed and intended to deny and deprive Plaintiff of rights guaranteed to him under the Constitution." (Compl. ¶ 56.) Section 1985(3) provides in pertinent part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). Thus, to state a cause of action under § 1985(3), Plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in

furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999); *see also Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586-87 (2d Cir. 1988).

In order to maintain an action under Section 1985, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003). The Complaint does not allege any meeting of the minds by the members of the "conspiracy," thereby failing the first element of the conspiracy count. Furthermore, where a complaint alleges a conspiracy to violate civil rights, vague and conclusory allegations "are properly disregarded." *Okwedy v. McLinari*, 150 F. Supp. 2d 508, 512 (E.D.N.Y. 2001) (citing *X-Men Security, Inc., v. Pataki*, 196 F.3d 56, 71 (2d Cir. 1999)). The allegations regarding the conspiracy are just that: vague and conclusory.

In sum, Plaintiff's § 1985 claim is vague and conclusory and fails to allege a meeting of the minds regarding the alleged conspiracy. As such, the Court grants Defendants' motion to dismiss Count III.

### III. Count IV: Failure to State a Common Law Contract Claim

Count IV alleges that "in rescinding Plaintiff's continuing appointment, in eliminating his position as Vice President of Marketing and Public Affairs, and in denying his request to be transferred . . . constituted a willful breach of the contractual relationship." (Compl. ¶ 60.) Plaintiff has failed to state a common law contract claim, however, because nowhere in the Complaint does he allege that a contract ever existed. The Complaint cites to the Handbook for the proposition that

"after receiving continuing appointments, one may indicate a desire to return to teaching . . ." but the Complaint never alleges that Plaintiff actually received a continuing appointment. As a result, having failed to allege the existence of a contract, Plaintiff has failed to state a common law contract claim. Accordingly, the Court grants Defendants' motion to dismiss the common law contract claim.

### III. Qualified Immunity

Defendants further assert the defense of "qualified immunity" in their motion to dismiss (*See* Def. Hollander's Reply Mem. at 6-15.) The doctrine of qualified immunity offers protection for "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This doctrine is said to be justified in part by the risk that the "fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2006) (citations and quotation marks omitted). Qualified immunity also extends to protect a government actor "if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *Id.* (citing *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995)); *see also Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000).

Though this defense may have merit, it turns on questions of fact that are not ripe for consideration on a motion to dismiss as it requires factual elaborations on the precise nature of Defendants' actions to determine whether they were "objectively reasonable." As a result, this consideration is best left for summary judgment. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993) ("Disposition by summary judgment is ordinarily appropriate when the qualified immunity defense is based on a showing that it was not clear at the time of the official acts

that the interest asserted by the plaintiff was protected by federal law. Summary judgment may also be available when the defendant's premise is that even if the contours of the plaintiff's federal rights and the official's permissible actions were clearly delineated at the time of the acts complained of, . . . it was objectively reasonable for the official to believe that his acts did not violate those rights.") (citation and quotation marks omitted).

## CONCLUSION

For all of the above reasons, the Court GRANTS Defendants' motions as to Count I, portions of Count II, Count III, and Count IV, and DENIES Defendants' motions as to the "procedural due process" portion of Count II. At the close of his briefs, Plaintiff moves for leave to amend pursuant to Rule 15(a). Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." Thus, to the extent that Counts I, II, III, and IV are dismissed, the Court GRANTS Plaintiff's motion for leave to amend.

**SO ORDERED.**

Dated: Central Islip, New York
March 31, 2006                                              /s/
                                                   Denis R. Hurley
                                                   Unites States District Judge